### WHISENANT v. COLE.  (No. 8858.)

(Court of Civil Appeals of Texas. Galveston. May 12, 1926. Rehearing Denied May 27, 1926.)

1. Judgment ⬤➡194—Judgment in action on notes, to foreclose liens, and for rent, held to have sufficiently disposed of all issues, including plaintiff's claim for rent.

In action to recover on notes given for purchase price of dairy cattle, to foreclose lien to secure notes, and to recover for rent of dairy and pasture, defendant seeking cancellation of notes and lien on ground of fraud and misrepresentation, judgment giving plaintiff title to cattle, canceling notes and liens, and granting defendant recovery of costs, held to have sufficiently disposed of plaintiff's claim for rent.

2. Trial ⬤➡143.

It is province of jury to determine issues raised by conflicting evidence.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by B. W. Whisenant against W. H. Cole. Judgment for defendant, and plaintiff appeals. Affirmed.

Bryan, Dyess, Colgin & Suhr, of Houston, for appellant.

Thos. W. Menefee, of Houston, for appellee.

PLEASANTS, C. J. Appellant brought this suit against appellee to recover upon two notes in his favor, executed by appellee, for the aggregate sum of $1,050, and to foreclose a lien given by appellee to secure the notes upon real and personal property described in the petition, and also to recover the further sum of $80 alleged to be due plaintiff for rent of dairy and pasture.

Appellee defended the suit on the ground that the execution of the notes and lien and contract of rent was procured by plaintiff by fraud and misrepresentation, and asked for cancellation of the notes and liens.

The trial in the court below with a jury resulted in a verdict and judgment in favor of appellee.

The evidence shows that on the 28th day of June, 1924, appellant sold and delivered to appellee 7 milk cows and 5 calves, for which appellee agreed to pay him $825, and executed his note in favor of appellant for said amount. To secure this note appellee gave appellant a mortgage upon the cattle and a deed of trust lien upon the real estate described in plaintiff's petition. These cattle were purchased by appellee for dairy purposes, and as a part of the contract of sale appellant rented to appellee for a term of 6 months the pasture in which the cattle were being kept at the time of the sale, together with the milking sheds and other improvements thereon, and agreed to keep the pasture and dairy supplied with water. Appellee agreed to pay $25 per month rent for this property.

On August 11, 1924, appellant sold appellee 3 more cows for the sum of $225, for which amount appellee gave his note to appellant and executed a second mortgage upon the 3 cows and the cattle previously purchased, and a second deed of trust upon the real property described in the petition.

The note for $825 was payable in monthly installments of $50 and the contract between the parties provided that, in event of default in the payment of any of these installments appellant might declare both of the notes due and proceed to enforce their payment.

Appellee made default on the payment of two of these installments, and appellant thereupon declared both notes due, and instituted this suit to recover thereon and to foreclose his liens. At the time the suit was instituted, appellant sequestered the cattle,

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and they were in his possession at the time of the trial.

After stating that he purchased the cattle from appellant, appellee testified as follows:

"At that time Mr. Whisenant said that they were all 3½ or 4 gallon cows. He said they were all Jerseys and Holsteins and were subject to registration and would give 3½ or 4 gallons a piece a day. I did not pay anything down on the cattle. I didn't have any money at that time. I executed a chattel mortgage to secure the note I had given for the cattle, and I also gave a deed of trust on some interest in this piece of property to secure the payment of these notes. I executed that deed of trust because he didn't want me to sell my property to pay for the cattle. He didn't want the property; all he wanted was to get rid of the cattle. He wanted that lien on that property to secure him so he would get his money. When the first month got around I paid that first note. When the next month come around I told Mr. Whisenant after that well dried up that the cattle were drying up, and I would not be able to pay the notes. I told him when I made the first payment that the well had gone dry and I had to have water, and he didn't offer to do anything. I sent Mr. Whisenant word with reference to giving the cattle back, I didn't get to see him, and I sent word by a negro who was working for him and his partner, Mr. Wells. I saw Mr. Whisenant out there after I put a well down. I spoke to Mr. Wells about putting the well down, and he said go and see Mr. Whisenant. I paid $70 rent on that property. I had a bull and a cow out there in that pasture, and Mr. Whisenant has the bull up there in the pasture now. Mr. Whisenant did not require me to give a mortgage on my own cattle to secure the lien; he took that in that suit he filed.

"I quit running that dairy because I didn't have any money to run it, and then he came and got the cattle. I milked the cattle up to the time he got them, and the 13 cows were giving about 10 or 12 gallons of milk per day. I wasn't making anything operating that dairy on that basis; in fact I was not making enough to pay for the feed and the operating expenses, and I wasn't able to meet the payment on the second note when it came due. I fed the cattle and took good care of them after I got them. I never had had any experience in the dairy business prior to that time. Those cattle are scattered all over Harris county now. Mr. Whisenant drove those cattle away under his suit for foreclosure. When Mr. Whisenant told me that these were good cows and subject to registration, I believed him. I thought he was going straight with me. I had never seen him before, and I relied on what he said. Mr. Whisenant's statements to me with reference to those cattle, what kind of cattle they were, and how much milk they would give, led me to enter into that contract, because I believed what he said about it. I did not have any knowledge and could not tell by looking at a cow what kind of stock she was. I could tell a Jersey from a Holstein just by the color. I don't know what a registered cow means or what a thoroughbred means."

In answer to special issues submitted by the court, the jury found that appellant rep-resented to appellee that each of the cows sold him would give 3½ gallons of milk per day; that these representations were false; and that appellee, in purchasing the cattle, relied upon these representations, and made no investigation as to their truth or falsity. Upon this verdict the court rendered the following judgment:

"It is therefore ordered, adjudged, and decreed by the court that to the plaintiff, B. W. Whisenant, be and hereby is given title to and possession of the cattle described in his petition, and that he have and keep possession of same, and that the chattel mortgage and the deed of trust given to plaintiff by defendant, on said cattle and on lots 4 and 5 in block 9, Brashear addition to the city of Houston, Harris county, Tex., be and the same are hereby canceled and annulled. It is further ordered that defendant, Cole, take nothing by his cross-action. It is further ordered, adjudged, and decreed by the court that the defendant, W. H. Cole, do have and recover of and from the plaintiff, B. W. Whisenant, all costs in this behalf expended, for which let execution issue in favor of the defendant and the officers of this court.".

[1] The first proposition presented in appellant's brief is as follows:

"Where judgment of the court does not dispose of all of the issues raised by the pleadings and the evidence thereof, there is no final judgment; and, accordingly, as the judgment of the court in this case did not dispose of the debt due plaintiff for pasture rent, the cause should be remanded for another trial."

The effect of this judgment is to deny appellant any recovery upon the notes or his claim for rent. The cancellation of the deed of trust and adjudging all costs of suit against appellant is the declaration of the legal result which follows the finding of the jury that the execution of the contract of purchase and sale of the cattle was obtained by fraud and misrepresentation, and necessarily implies the further declaration that appellant was not entitled to recover on the notes which were executed in pursuance of the fraudulent contract, or on the claim for rents which grew out of this contract.

While the judgment is not as explicit as it should be in denying appellant any recovery upon the notes and claim for rent, we do not think it can be held that it fails to dispose of appellant's claim for rent, and should be reversed on that ground. If appellant's contention that that judgment does not dispose of all the issues raised by the pleadings and evidence is sound, the judgment is not a final judgment, and this court has no jurisdiction of the appeal. We do not think this judgment should be so construed.

[2] The remaining propositions presented in appellant's brief complain of the judgment on the ground that the evidence is not sufficient to sustain the several findings of the jury before set out.

The evidence upon all of these issues is conflicting, but it was the province of the jury to determine the issues raised by this conflict, and we are not prepared to hold that the verdict upon any of the issues is so .against the weight and preponderance of the evidence as·to be clearly wrong, and we are therefore without authority to disturb the findings.

It follows that the judgment should be affirmed, and it has been so ordered.

Affirmed.